378 A.2d 283

**COMMONWEALTH of Pennsylvania**

v.

**James Alan ROMBERGER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 26, 1977.

Decided Oct. 7, 1977.

Carl B. Stoner, Jr., Harrisburg, for appellant.

Reid H. Weingarten, Deputy Dist. Atty., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is the third time that this Court has had occasion to consider this cause. We are now being asked to determine the effect of our earlier decisions upon the admissibility of a signed written statement of appellant that was elicited while he was in police custody following his arrest. Since we are of the view that the admission of this statement was in violation of our earlier directives and was contrary to the law of this Commonwealth we are again forced to reverse the judgment of sentence and to award a new trial.

On November 6, 1965, the body of Joy Keifer, who had been reported missing on November 4th, was discovered in Wildwood Lake, Harrisburg. Appellant, James Alan Romberger, was subsequently arrested and convicted of murder of the first degree in connection with this killing. In accordance with the verdict of the jury a sentence of death was imposed. A direct appeal was taken to this Court and the judgment of sentence was reversed and a new trial awarded. *Commonwealth v. Romberger*, 454 Pa. 279, 312 A.2d 353 (1973). (*Romberger I*). After a denial by this Court of a petition for reargument filed by the Commonwealth, the United States Supreme Court granted certiorari and thereafter vacated the order of this Court and remanded the matter back for further consideration in view of its then recent decision in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). *Pennsylvania v. Romberger*, 417 U.S. 964, 94 S.Ct. 3166, 41 L.Ed.2d 1136 (1974).

The matter was again briefed and reargued and after further consideration we concluded that the principles an-

nounced in *Michigan v. Tucker, supra,* did not require a different result and we reinstated our original mandate. *Commonwealth v. Romberger,* 464 Pa. 488, 347 A.2d 460 (1975). (*Romberger II*). A retrial resulted in a conviction of murder of the first degree and a sentence of life imprisonment was imposed. We have now before us the appeal from the judgment of sentence which resulted from the second trial.[1]

The circumstances of this sordid crime have been set forth in our earlier opinion and need not be repeated here in detail. For purposes of the instant discussion it is sufficient to note that prior to his formal arrest appellant made numerous oral statements which were contradictory and, although intended to be exculpatory, placed the appellant at the scene of the crime with the victim at or about the time she met her untimely death. The questioning of Mr. Romberger by police officials took place between 12:30 P. M. and 11:52 P. M. when he was formally charged with the murder. During this period of time he was moved from his home to police headquarters, a partial polygraph was conducted and he was taken to the scene of the crime. Thereafter he was formally charged, arraigned and administered full *Miranda* warnings. Thereupon appellant admitted killing the deceased, gave a written signed statement to that effect. It is conceded for purposes of this appeal that Mr. Romberger was not given the full panoply of warnings until he was formally charged and arraigned.

The first question to be resolved in this appeal is whether the admissibility at trial of the written signed statement was ruled upon by this Court in either of our earlier decisions. It is axiomatic that if such a determination were, in fact, made by this Court, the trial judge at the time of the retrial was powerless to review that ruling.

"A lower court is without power to modify, alter, amend, set aside or in any manner disturb or depart from the judgment of the reviewing court as to any matter decided

1. Jurisdiction of the instant appeal is founded upon the Act of 1970, July 31, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1).

on appeal. . . . Under any other rule, litigation would never cease, and finality and respect for orderly process of law would be overcome by chaos and contempt." *Haefele v. Davis,* 380 Pa. 94, 98, 110 A.2d 233, 235 (1955).

See also *Commonwealth v. Tick,* 431 Pa. 420, 246 A.2d 424 (1968); *Re Vacation of Melon St.,* 192 Pa. 331, 43 A. 1013 (1899); *Albright v. Wella Corporation,* 240 Pa.Super. 563, 359 A.2d 460 (1976); *Blymiller v. Baccanti,* 236 Pa.Super. 211, 344 A.2d 680 (1975); *Meehan v. Philadelphia,* 184 Pa.Super. 659, 136 A.2d 178 (1975).

The Commonwealth contends, and the court below agreed, that our decisions in *Romberger I* and *Romberger II* were not intended to preclude a further consideration of the legality of the written statement at the time of retrial. Having made that determination the court concluded that the written statement was admissible and permitted its introduction at the second trial against appellant. We hold that *Romberger I* expressly ruled that all of the statements elicited by police officials from appellant were inadmissible at trial and that the court below erred when it considered this question afresh at the time of the retrial.

In *Romberger I* appellant challenged his conviction, inter alia, on the grounds that the statements made by him to the investigating officers were elicited without first warning him of his right, if indigent, to have counsel provided for him during any questioning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In response the prosecution argued that appellant was afforded all the required procedural safeguards dictated by *Miranda.* Specifically, it was argued that the questioning prior to the time appellant was formally charged with the murder of Ms. Keifer did not require that the warnings be given, that in any event the statements were voluntary, that Romberger had waived his right to the particular warning and, in the alternative, that under the totality of the circumstances, the warning in question was unnecessary. These contentions were considered and rejected and we upheld appellant's

challenge as to the admissibility *of all of the statements made* by him to the investigating detectives. As noted by the trial court in its opinion, "the Supreme Court did not have before it the issue of the admissibility of the signed statement *alone, . . .*" (emphasis in original text). Nor did we, in the reasoning or the mandate of our opinion in *Romberger I,* in any way distinguish between the oral statements and the signed statement. Particularly significant was our language in *Romberger II* wherein we described the issue that we addressed in *Romberger I* in the following terms:

"The specific issue considered was *the admissibility of oral and signed, written statements* which were elicited from the accused without first advising him of the right to appointed counsel if he was indigent and unable to bear the expense of representation." [Emphasis added] *Romberger II,* 464 Pa. at 491, 347 A.2d at 461.[2]

Further, the reasoning in *Romberger II* was premised upon the view that there was no legal distinction, for purposes of that appeal, between the oral statements and the signed, written statement. In reaching the question posed by *Michigan v. Tucker, supra,* whether the police conduct abridged the constitutional privilege itself or simply departed from the prophylactic standards designed to protect the right we stated:

"Here we are not concerned with the fruits of the confession but rather the admissibility of the statements themselves." *Romberger II* 464 Pa. at 492, 347 A.2d at 461.

Again no differentiation was drawn between the effect of the primary illegality on the written statement in question and its impact on the other oral statements elicited during police interrogation. Thus when we ruled in *Romberger I* (a decision which was reaffirmed in *Romberger II*) that the statements of appellant to the police were inadmissible, that holding encompassed the written statement as well as the oral ones.

---

2. The police only obtained one written statement from the appellant and that is the statement that we are here considering.

Moreover, in addition to the fact that the court below has no right to reconsider the issue, the trial court's further consideration of the question violated the law of waiver in this jurisdiction. The trial court predicated its finding that the written statement was admissible upon its conclusion that the giving of adequate warnings prior to the obtaining of that statement dissipated the taint arising from the original illegality. The court distinguished the issue presented in the first trial on the grounds that in that trial the Commonwealth had been allowed to introduce, over defense objection, testimony relating to the oral statements as well as the written statement. In the second trial all evidence pertaining to the questioning which elicited appellant's oral responses was excluded and only the written statement was introduced. The court reasoned that since the written statement was preceded by the formal arrest, arraignment and adequate warnings these factors attenuated the taint occasioned by the initial incomplete warnings. We believe, however, that the court was incorrect in even considering the merits of the dissipation argument since it had been previously waived due to the failure of the Commonwealth to raise it on the first direct appeal.[3]

It is a fundamental doctrine in this jurisdiction that where an issue is cognizable in a given proceeding and is not raised it is waived and will not be considered on a review of that proceeding. *Dilliplane v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Edwards*, 458 Pa. 404, 327 A.2d 872 (1974); *Commonwealth v. Riley*, 459 Pa. 42, 326 A.2d 400 (1974); *Commonwealth v. Hamilton*, 459 Pa. 304, 329 A.2d 212 (1974) (cert. den. 420 U.S. 981, 95 S.Ct. 1411, 43 L.Ed.2d 663); *Commonwealth v. Crawford*, 461 Pa. 260, 336 A.2d 275 (1975); *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975); *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975); *Com-*

3. In view of the disposition of this case we express no view as to the merits of the Commonwealth's position that the intervening arraignment and other circumstances purged the taint from the prior defective warnings.

*monwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Pritchett,* 468 Pa. 10, 359 A.2d 786 (1976). Where as here, the failure to raise the issue occurred on direct appeal in a court of last resort we have applied the same principle by refusing to consider the issue on collateral attack. *Commonwealth v. Gilmore,* 464 Pa. 464, 347 A.2d 305 (1975); *Commonwealth v. Hines,* 461 Pa. 271, 336 A.2d 280 (1975); *Commonwealth v. Slavik,* 449 Pa. 424, 297 A.2d 920 (1972); PCHA, Act of January 25, 1966, P.L. (1965) 1580 § 4(b), 19 P.S. § 1180–4(b). Further the doctrine of waiver has been held to apply even where the issue is of constitutional dimensions. See *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975).

■ The general rule is that evidence obtained through a prior illegality is inadmissible against a criminal defendant. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Marabel,* 445 Pa. 435, 283 A.2d 285 (1971). It is true, however, that "evidence of incriminating statements made by an accused after he has been fully warned of his constitutional rights is not rendered inadmissible ipso facto because he made earlier incriminating statements during police questioning in the absence of awareness of these rights." *Commonwealth v. Greene,* 456 Pa. 195, 197, 317 A.2d 268 (1974); *Commonwealth v. Mitchell,* 445 Pa. 461, 465, 285 A.2d 93, 95 (1971). See also *Commonwealth v. Moody,* 429 Pa. 39, 239 A.2d 409 (1968). However, in order for the subsequent incriminating statement not to be excluded at trial, the Commonwealth must establish by a preponderance of the evidence "that the last statement or statements were not the exploitation of the original illegality and were obtained under circumstances sufficiently distinguishable to purge them of the original taint." *Commonwealth v. Mitchell, supra. See also Commonwealth v. Cunningham,* 471 Pa. 577, 370 A.2d 1172 (1977); *Commonwealth v. Cockfield,* 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968); *Commonwealth v. Banks,* 429 Pa. 53, 239 A.2d

416 (1968). To meet this burden this Court has held that the Commonwealth must show that the necessary causal relationship or nexus between the first tainted statement or statements and the subsequent utterances is missing. *Bertrand's Appeal*, 451 Pa. 381, 303 A.2d 486 (1973); *Commonwealth v. Marabel, supra,* 445 Pa. at 447, 283 A.2d at 290–91. Restated, the Commonwealth must demonstrate that there was a break in the "stream of events" which insulated the final statement from the prior illegality. *Commonwealth v. Greene, supra,* 456 Pa. at 197–98, 317 A.2d at 269–70. See also *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1957). It is axiomatic, then, that if the Commonwealth has the burden of proving this break in the "stream of events," it must first identify and raise the issue so that the court has the opportunity to rule on it with the benefit of argument and advocacy.

The prosecution in meeting the challenge to the admissibility of all of appellant's statements during the first trial made no effort to distinguish the circumstances under which the written statement was obtained or to insulate it in any way from a possible illegality. As stated previously, the thrust of the argument of the Commonwealth in *Romberger I* was an attempt to justify the adequacy of the warnings and to dispute the existence of any primary illegality. Thus, although the dissipation was obviously cognizable on direct appeal in response to appellant's challenge, the prosecution failed to advance it and thereby lost the right thereafter to have it considered by either this Court or any other court in this Commonwealth.[4]

4. The attenuation argument was first alluded to in the Commonwealth's petition for reargument after the filing of our opinion in *Romberger I.* We need not reach the question as to whether the concept of waiver operates to preclude an issue which was not raised in the original argument before that tribunal (assuming it was otherwise preserved), since reargument was denied by a unanimous court.

Additionally, we note that, assuming arguendo, the Commonwealth could have, if given the opportunity, established a dissipation of taint, that alone would not have caused a change in our view that the judgment of sentence of the first trial should have been reversed. Since evidence of the oral as well as the written statement was introduced at that trial, the prosecution, in addition to establishing

Accordingly, the judgment of sentence is reversed and a new trial awarded.

MANDERINO, J., concurs in the result.

ROBERTS, J., files a concurring opinion.

ROBERTS, Justice, concurring.

I agree with the majority that the admissibility of appellant's written statement was decided in a previous appeal and that consequently the trial court erred in reconsidering this issue. Because our decisions in *Commonwealth v. Romberger*, 454 Pa. 279, 312 A.2d 353 (1973) (*Romberger I*) and *Commonwealth v. Romberger*, 464 Pa. 488, 347 A.2d 460 (1975) (*Romberger II*) held that appellant's statement was inadmissible, it is not necessary to decide if waiver principles required the trial court to reach the same result.

the admissibility of the written statement, would have been required to prove that the introduction of the oral statements was harmless error. Not only did the petition for reargument fail to allege harmless error as to the introduction of this testimony, but the Commonwealth's brief filed in this appeal contains the following pertinent observation:

". . . the pre-arrest statements, amounting to four altered versions in which appellant admitted more and more of the facts leading to the murder, . . . were significant pieces of evidence against appellant . . .. Moreover, the Commonwealth has never argued that the admission of the pre-arrest statements was harmless error . . .".